UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

vs.                                      Case No. 8:14-cv-02427-T-27TGW

WEALTH STRATEGY PARTNERS, LC,
HARVEY ALTHOLTZ, STEVENS
RESOURCE GROUP, LLC, and GEORGE
Q. STEVENS.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants Wealth Strategy Partners, LC and Harvey Altholtz's Motion to Dismiss Amended Complaint (Dkt. 24), and Plaintiff's response in opposition (Dkt. 30). Upon consideration, the motion is DENIED.

### BACKGROUND

The SEC brought this lawsuit against Defendants Wealth Strategy Partners, LC ("WSP"), Harvey Altholtz, Stevens Resource Group, LLC ("SRG"), and George Q. Stevens, alleging violations of the federal securities laws. SRG and Stevens entered into consent judgments approved by the Court in December 2014. (Dkts. 16, 17).

Altholtz created two private investment funds, The Adamas Fund, LLP ("Adamas") and The Stealth Fund, LLP ("Stealth," collectively with Adamas, the "Funds") in 2007. (Dkt. 21 ¶ 26). Adamas and Stealth primarily invested in small publicly-traded companies (the "Portfolio

1

Companies"). (*Id.* ¶¶ 26-27). WSP was the general partner for both Funds, and Altholtz was the principal of WSP. (*Id.* ¶ 28). The Funds raised nearly $31 million in investments from April 2007 until April 2010. (*Id.* ¶¶ 29-30). WSP received a management fee of 2.5% of the Funds' asset values and an incentive fee of 30% of the Funds' quarterly net profits. (*Id.* ¶ 36).

The SEC alleges that WSP and Altholtz (collectively referred to as "Defendants") violated the securities laws in three different ways. First, the SEC alleges that Altholtz and WSP failed to disclose to investors a series of guarantees made and loans received by the Funds, as part of a scheme to misrepresent the true value of the Funds to current and potential investors. Altholtz family trusts made loans to Stealth's Portfolio Companies in 2009, in an attempt to increase the value of the underlying assets of Stealth. (*Id.* ¶¶ 46-48). Stealth then guaranteed the Altholtz loans made to the Portfolio Companies, in violation of its operating agreement. (*Id.* ¶¶ 46-48, 56-58). Also, WSP and an Altholtz family trust made loans to the Funds, which the Funds were obligated to pay back at high interest rates. (*Id.* ¶¶ 66-72). Second, the SEC alleges that newsletters sent to investors in Stealth and Adamas, authored by Stevens and Altholtz, contained misrepresentations about the financial health of several of the Portfolio Companies. (*Id.* ¶¶ 77-94). The effect of these newsletters was to misrepresent the value of the underlying assets of the Funds. (*Id.*) Third, the SEC alleges that in 2010, Altholtz sold securities in Adamas for the benefit of a family trust, but told other investors not to redeem their investments in Adamas, because Adamas lacked sufficient funds or other investors would be harmed. (*Id.* ¶¶ 95-99).

Altholtz and WSP move to dismiss the Amended Complaint, claiming the alleged actions and omissions do not violate the securities laws.[1]

## STANDARD

A complaint should contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2008) (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.*

---

[1] Defendants attach nine documents to the motion to dismiss. Only documents incorporated by reference into the complaint which are central to the SEC's claim and undisputed may be considered at this stage. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Here, these documents include the Adamas and Stealth operating agreements, private placement memoranda, two of the allegedly misleading newsletters, and a note issued in conjunction with an Altholtz loan to a Portfolio Company. (*See* Dkt. 24-1 to 24-9). The other documents will be disregarded.

All of the factual allegations contained in the complaint must be accepted as true for the purposes of a motion to dismiss, but this tenet is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## DISCUSSION

### Elements of Securities Law Claims

The SEC contends the loans made to the Funds and the guarantees made by the Funds violated Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1) (Count I); Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(2) and (a)(3) (Count IV); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b-5(a), (b), and (c) (Count VII); Section 206(4) and Rule 206(4)-8(a) of the Advisers Act, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-8(a) (Count XII); and aided and abetted violations of Section 206(4) and Rule 206(4)-8(a) of the Advisers Act (Count XIII).

The SEC contends that the alleged misleading statements in the newsletters violated Section 17(a)(1) of the Securities Act (Count II), Sections 17(a)(2) and 17(a)(3) of the Securities Act (Count V), and Section 10(b) of the Exchange Act and Rule 10b–5 (Count VIII).

Finally, the SEC contends that the preferential redemptions violated Section 17(a)(1) of the Securities Act (Count III), Sections 17(a)(2) and 17(a)(3) of the Securities Act (Count VI), and Section 10(b) of the Exchange Act and Rule 10b–5 (Count IX).[2]

---

[2] Counts X and XI are only against Stevens and SRG, and therefore are not subject to the motion.

To establish a violation of Section 17(a)(1) of the Securities Act, the SEC must prove (1) misrepresentations or misleading omissions that were material, (2) in the offer or sale of securities, (3) made with scienter. *SEC v. Monterosso*, 756 F.3d 1326, 1333-34 (11th Cir. 2014) (citing *SEC v. Merch. Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) and *Aaron v. SEC*, 446 U.S. 680, 697 (1980)). For Sections 17(a)(2) and (a)(3), the first two elements are the same, but the SEC need only show negligence. *Id.* The elements of a Section 10(b) and Rule 10b–5 violation are "substantially similar" to a Section 17(a)(1) claim, and require (1) a material misrepresentation or materially misleading omission, (2) in connection with the buying or selling or securities, (3) made with scienter. *Id.* The SEC may establish the requisite scienter for both the 17(a)(1) and the 10(b) claims with a "showing of knowing misconduct or severe recklessness." *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982). The test for materiality is "whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." *Merch. Capital*, 483 F.3d at 766 (quoting *Carriba Air*, 681 F.2d at 1323 (internal citation omitted)).

To establish violations of Section 206(4) and Rule 206(4) of the Advisers Act, the SEC must prove (1) the Defendants were investment advisers, (2) in interstate commerce, (3) who engaged in a transaction or pattern of business, (4) which was fraudulent, deceptive, or manipulative. 15 U.S.C. § 80b-6(4); *see U.S. v. Elliott*, 62 F.3d 1304, 1312 (11th Cir. 1995) (explaining intent of Advisers Act was to prohibit a broad range of fraudulent practices). Facts that establish violations of other anti-fraud securities laws, including Section 17(a) and Section 10(b), also establish violations of Section 206 if the defendant is an investment adviser. *SEC v. Young*, 2011 WL 1376045, at *7 (E.D. Pa. Apr. 12, 2011) (quoting *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007)). Finally, to establish aiding and abetting violations of the securities laws, the SEC must show (1) the

defendant had knowledge of (2) a primary violation of the securities laws and (3) knowingly rendered substantial assistance. 15 U.S.C. § 78t; *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975);[3] *SEC v. BIH Corp.*, No. 2:10-CV-577-FTM-29, 2011 WL 3862530, at *6 (M.D. Fla. Aug. 31, 2011) (citing *SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1269 (S.D. Fla. 2011)).

### Loans and Guarantees (Counts I, IV, and VII)

Altholtz and WSP raise several arguments related to the loans and guarantees, many of which relate to multiple counts. They argue the loans and guarantees were (1) not fraudulent, (2) not material, (3) did not involve misrepresentations or omissions, (4) did not result in money accruing to either Defendant, (5) and that neither Defendant acted with scienter. These arguments are unavailing.

First, Altholtz and WSP argue that the loans and guarantees to the Funds and Portfolio Companies did not constitute fraud, because the cash benefitted the funds. To the extent this argument turns on proximate cause or damages, it is not well taken. While private parties bringing securities fraud claims must prove they relied on allegedly fraudulent misstatements or omissions and those misstatements or omissions caused their damages, the SEC, as enforcer of the securities laws, need not do so. *SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012).

To the extent Defendants' contentions are directed to the materiality element, they also fail. The SEC alleges that Stealth's undisclosed guarantee of loans to the Altholtz family trusts exposed Stealth to additional liability, hid the true financial health of Stealth and certain of the Portfolio Companies, and masked the actual use of investor funds. (Dkt. 21 ¶¶ 49-52). The SEC also alleges

---

[3] The Eleventh Circuit has adopted as binding precedent all decisions the former Fifth Circuit made prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

WSP made undisclosed loans directly to Adamas and Stealth in violation of the Adamas and Stealth operating agreements. (*Id.* ¶¶ 64-65). The SEC alleges repayment of these loans depleted the assets of the Funds, based on the duration of the loans and their high interest rates. (*Id.* ¶¶ 65-72). WSP and Altholtz dispute the SEC's factual allegations and inferences, but at this stage, it is inappropriate to weigh the evidence to decide a mixed question of law and fact. *See In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1364 (S.D. Fla. 2001).

Next, Defendants challenge the existence of material misrepresentations or omissions related to the loans and guarantees. As stated, material misrepresentations or omissions are a required element of claims based on Sections 17(a)(1), (2), and (3) of the Securities Act, and Section 10(b) and Rule 10b–5 of the Exchange Act. Defendants argue that the SEC has not identified an omission that is both material and would render the statements actually made misleading, relying on *Matrixx Initatives v. Siracusano*, 131 S. Ct. 1309, 1321 (2011).

An omission constitutes securities fraud when there is a duty to disclose, which "may arise from a defendant's previous decision to speak voluntarily." *Finnerty v. Stiefel Labs., Inc.*, 756 F.3d 1310, 1316 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1549 (2015); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1299 (11th Cir. 2011). This includes a duty to revise previous statements that were true at the time they were made, but later became misleading. *Id.* at 1317.

The SEC alleges that the operating agreements of both Adamas and Stealth stated that WSP and WSP's affiliates were prohibited from making loans to Adamas and Stealth, (Dkt. 21 ¶¶ 55, 64), but that WSP and Altholtz-controlled trusts in fact made loans to Adamas and Stealth. (*Id.* ¶ 65). Accordingly, the SEC has pleaded that Defendants made omissions with regard to the loans that rendered previous statements misleading.

The SEC alleges that the Funds guaranteed loans made by WSP and other Altholtz-controlled entities to the Portfolio Companies. (*Id.* ¶¶ 44-49). However, the SEC alleges neither the Defendants nor the Funds disclosed that the Funds' assets could be used to guarantee loans made by WSP or Altholtz. (*Id.* ¶¶ 50, 56-57, 60). This failure to disclose, the SEC alleges, meant that investors were unaware of how their resources were used and concealed the true value of the Portfolio Companies and the Funds. (*Id.* ¶¶ 50-52, 58-59). In July 2009, Altholtz sent an email to investors seeking permission to make the guarantees, but did not reveal the guarantees had already been made. (*Id.* ¶ 61). Based on these allegations, the SEC has sufficiently pleaded that Defendants made material omissions with regard to the guarantees.

Defendants next argue that the SEC has not alleged that either Altholtz or WSP received money or property by means of the challenged guarantees or loans, which is a required element of a Section 17(a)(2) claim. This argument fails, because the SEC has alleged that the value of the Funds was misstated by the guarantees and loans, and that WSP and Altholtz were compensated based on the value of the Funds. (Dkt. 21 ¶¶ 36, 43, 58).

Finally, Defendants contend that the SEC has not sufficiently alleged that WSP and Altholtz acted with scienter with regard to the guarantees and loans. To state a claim under Rule 10b-5, the SEC must allege that the material misstatements or omissions were made with scienter. *FindWhat Investor*, 658 F.3d at 1299. Scienter requires "intent to defraud or severe recklessness." *Id.* (quoting *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 790 (11th Cir. 2010)). And severe recklessness requires:

> [H]ighly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been

aware of it. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n. 18 (11th Cir. 1999)).

The SEC has sufficiently alleged scienter for both WSP and Altholtz. As stated, the SEC alleges that the loans were made in violation of both of the Funds' operating agreements. (Dkt. 21 ¶¶ 66, 69). The SEC has also alleged that guarantees were used to artificially prop up the values of the Portfolio Companies, which in turn inflated the value of the Funds, while at the same time increasing their liability, unbeknownst to other investors. (*Id.* ¶¶ 46, 50-52). Viewing these and the other factual allegations of fraudulent intent in aggregation, as permitted by *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1016-17 (11th Cir. 2004), the SEC's allegations are sufficient to satisfy the standard of severe recklessness, if not outright fraudulent intent.

### Loans and Guarantees as Investment Advisers (Counts XII and XII)

Counts XII and XIII are based on the same factual allegations regarding the loans and guarantees as Counts I, IV, and VII, but bring claims under the Advisers Act and related regulations, and for aiding and abetting violations of the Advisers Act. Defendants challenge these claims primarily on the contention that WSP and Altholtz were not registered investment advisers until January 2010, and the misrepresentations alleged in the complaint occurred before that time. They argue that because they were not registered investment advisers, they are not subject to the Advisers Act.

This argument is unavailing for two reasons. First, based on the allegations in the complaint, notwithstanding their registration status, WSP and Altholtz were investment advisers prior to 2010, because they "for compensation, engage[d] in the business of advising others . . . as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C § 80b-2(a)(11). As the controlling entity and individual of Stealth and Adamas, both of which solicited capital from

investors and invested funds on their behalf, WSP and Altholtz "exercised . . . control over what purchases and sales are made with investors' funds, [which] is considered to be investment advice for purposes of the [Advisers] Act." *United States v. Ogale*, 378 Fed. App'x 959, 960 (11th Cir. 2010) (citing *United States v. Elliott*, 62 F.3d 1304, 1310 (11th Cir. 1996) and *Abrahamson v. Fleschner*, 568 F.2d 862, 871 (2d Cir. 1977)). Second, the complaint alleges WSP and Altholtz registered as investment advisers in January 2010. (Dkt. 21 ¶¶ 17-18). Investments were solicited for both Funds until April 2010, without disclosure of the loans, guarantees, or other allegedly fraudulent conduct. (*Id.* ¶¶ 30, 68, 70). Therefore, the motion to dismiss is due to be denied with regard to Counts XII and XIII.

### Newsletters (Counts II, V, and VIII)

Defendants challenge the claims related to the newsletters on five separate grounds. First, they argue that the newsletters were not distributed in connection with the offer or sale of a security, as required for claims based on Section 17(a)(2) and Rule 10(b)-5. Second, they argue the newsletters did not include material misrepresentations. Third, they contend for the purposes of Section 17(a)(2), WSP and Altholtz were not negligent, as they only relied on Stevens' work. Fourth, they maintain no inference of scienter can be drawn from their conduct. Finally, they claim that they were not the makers of the statements in the newsletters. None of these arguments support dismissal.

Defendants' first argument is that the newsletters were not distributed in connection with an offer, purchase, or sale of a security, because the newsletters were published in 2009 and 2010, after the initial offering period for the Funds was closed. As an initial matter, this argument appears to be directed only to Adamas. The complaint alleges Stealth's offering period lasted until November 2009, and the misrepresentations were from December 2008 until September 2009. (Dkt. 21 ¶¶ 29,

39, 77-81). With respect to Adamas, the newsletters in question were in December 2008 and March 2009. (*Id.* ¶¶ 78, 89). However, the SEC alleges that although the primary offering period for Adamas closed prior to the newsletters, the Defendants continued to offer interests in Adamas until April 2010. (*Id.* ¶ 30). Therefore, the complaint sufficiently alleges the newsletters were distributed in connection with the offer or sale of a security.

Next, Defendants contend that the newsletters do not contain material misrepresentations. Defendants note that the SEC has focused on a minority of statements in the newsletters, and the statements themselves can be read in a non-misleading way. However, at this stage, the SEC's allegations are minimally sufficient. The complaint alleges that a newsletter stated that one of Stealth's Portfolio Companies was profitable based on selling energy drinks, when in fact it was not. (Dkt. 21 ¶ 77). Another newsletter stated that a different Portfolio Company in which both Funds had invested held $4 million in cash, when those funds were actually from Stealth's capital infusion. (*Id.* ¶ 78). The complaint also alleges false statements and omissions about Portfolio Companies Access Key and ICCW relating to their profitability and revenue generation. (*Id.* ¶¶ 84-85, 89-91). At this stage, taking the well-pled facts as true, these allegations suffice as material misrepresentations and omissions.

The state of mind required for Sections 17(a)(2) is negligence. *Aaron v. SEC*, 446 U.S. 680, 701 (1980). Defendants argue they were not negligent in making the statements in the newsletters, as required by Section 17(a)(2), because Stevens prepared the newsletters and the SEC did not allege facts showing that the Defendants could not rely on him. However, the SEC has alleged that Altholtz reviewed the newsletters and had personal knowledge of many of the Portfolio Companies in question. (*Id.* ¶¶ 75, 86, 92). Indeed, Altholtz was listed as the author of some of the newsletters.

(*Id.*) The SEC has sufficiently alleged Defendants acted negligently in the drafting and dissemination of the newsletters.

Scienter is required for claims based on Section 17(a)(1) and Rule 10b–5. The SEC's allegations regarding Defendants' knowledge of the Portfolio Companies true strength, juxtaposed against the statements in the newsletters, are sufficient to raise an inference of intent to defraud or severe recklessness, as required to show scienter. *See FindWhat Investor Group*, 658 F.3d at 1299.

Defendants' final argument related to the newsletters is based on the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011). In *Janus Capital*, the Supreme Court held only the "maker" of a statement, meaning "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it," is liable for violations of Rule 10b–5. *Id.* at 2302. Defendants contend Altholtz and WSP were not "makers" of the relevant statements in light of the test.

*Janus Capital* applies only to claims based on Rule 10b–5(b), not claims based on Section 17(a), Section 10(b), and other parts of Rule 10b–5. *See SEC v. Monterosso*, 756 F.3d at 1334. Even if *Janus Capital* does apply to Rule 10b–5 with regard to the newsletters, the factual allegations in the complaint are sufficient to support a finding that Defendants were the makers of the statements in the newsletters, based on their control over the newsletters. (Dkt. 21 ¶¶ 28, 40, 75). *See Janus Capital*, 131 S. Ct. at 2302.

### Preferential Redemptions (Counts III, VI, and IX)

The final conduct at issue is the allegedly preferential redemptions from the Funds by the Defendants. Defendants argue these claims fail because there were (1) no false representations (2) made in connection with the offer or sale of a security, (3) and Defendants had no duty to

subordinate their withdrawal requests to other withdrawal requests. More generally, Defendants argue that unfair conduct does not violate the anti-fraud provisions of the securities laws without a showing of deception. Defendants' arguments are unavailing.

The contention that there were no false representations or omissions made in connection with the offer or sale of a security is belied by the complaint. The SEC alleges that in early 2010, investors sought to redeem their investments in Adamas, and were told by Altholtz there was not sufficient cash on hand to redeem their investments without harming other investors. At the same time, Altholtz allegedly made a redemption payment of $60,200 to his family's trust from Adamas. (Dkt. 21 ¶¶ 95-99). These allegations are sufficient to satisfy the misrepresentation requirement, as well as satisfying the requirement that they were made in connection with the offer or sale of a security.

Defendants' claim based on an alleged lack of duty fares no better. The SEC's contention is that Alholtz engaged in fraudulent practices by redeeming his investment while telling investors they could not redeem their own funds, not that he had a duty not to redeem his investments or to allow other investors to do so. These allegedly fraudulent practices are an adequate factual basis to support a claim for violations of the securities laws.

Finally, as Defendants state, *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 475-76 (1977) stands for the proposition that unfair acts do not violate the anti-fraud statutes without deception. However, the SEC has alleged "some element of deception" in the preferential redemptions here, not simply that investors were treated "unfairly." *Id.* at 476-77. Therefore, the claims based on the preferential redemptions will not be dismissed.

## Scheme Liability

Section 17(a)(1) and (a)(3) and Rule 10b–5(a) and (c) make it unlawful to use fraudulent schemes or deceptive devices in connection with the sale of securities. *SEC v. St. Anselm Exploration Co.*, 936 F. Supp. 2d 1281, 1298 (D. Colo. 2013) (citing *SEC v. Zandford*, 535 U.S. 813, 819 (2002)). *See SEC v. Goble*, 682 F.3d at 944. Defendants contend to state a claim based on scheme liability, the SEC must allege conduct that goes beyond misrepresentations and omissions subject to Rule 10b–5(b). *See Public Pension Fund Group v. KV Pharmaceutical Co.*, 679 F.3d 972, 987 (8th Cir. 2012) ("[A] scheme liability claim must be based on conduct beyond misrepresentations or omissions actionable under Rule 10b–5(b)."); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011) (same); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (same). The SEC argues scheme liability can be based on misrepresentations and omissions, citing a recent decision of the Commission interpreting the scope of Rule 10b–5(a) and (c). *In the Matter of John P. Flannery & James D. Hopkins*, SEC Release No. 3981, 2014 WL 7145625, at *12-13 (Dec. 15, 2014).

This dispute need not be resolved at this time, because even accepting for purposes of this motion Defendants' narrower definition of scheme liability, the SEC has sufficiently alleged a claim based on scheme liability. The complaint alleges that Defendants used loans and guarantees and preferential redemptions as part of a scheme to disguise and artificially inflate the value of the Funds. While some of Defendants' conduct was based on misrepresentations and omissions, it also included actions that allegedly went beyond statements, including the guarantee of loans by Stealth, which inflated the value of its Portfolio Companies; the loans made by the Altholtz-controlled entities to Stealth and Adamas at a high interest rate; and the preferential redemptions of Altholtz investments.

(*See* Dkt. 21 ¶¶ 46-49, 52, 59, 66-72, 95-99). Defendants argue that their disclosure of Stealth's guarantees undermines the claim that they were fraudulent. As the SEC responds, however, that disclosure was made after the allegedly fraudulent conduct had occurred. Accordingly, the motion to dismiss will be denied with regard to scheme liability.

## Remedies

Defendants raise a series of related challenges to the remedies sought by the SEC. First, they contend that claims for penalties based on conduct before September 25, 2009 are time barred. Second, they contend the SEC's request for disgorgement is legally flawed. Finally, they seek to strike the SEC's demand for declaratory relief.

First, Defendants contend that the SEC's claims for penalties based on conduct before September 25, 2009, five years before the filing of the first complaint, are barred by the statute of limitations in 28 U.S.C. § 2462.[4] In *Gabelli v. SEC*, the Supreme Court held that the five year clock begins to run when the fraud occurs. 133 S.Ct. 1216, 1220-21 (2013). However, the disgorgement and injunctive relief sought by the SEC is not subject to the statute of limitations in 28 U.S.C. § 2462, so long as the relief sought is to remedy past wrongs or prevent future harms. *See generally SEC v. Jones*, 476 F. Supp. 2d 374, 380-81 (S.D.N.Y. 2007). The SEC also argues some of the misrepresentations continued after September 25, 2009, and therefore civil penalties may be imposed.

At this point, it would be premature to dismiss the SEC's claims for penalties. The SEC seeks disgorgement and injunctive relief for the same conduct, which is not subject to the five-year time

---

[4] As the securities laws generally do not contain statutes of limitations, the general provision in 28 U.S.C. § 2462 applies. *See Gabelli*, 133 S.Ct at 1219; *SEC v. Huff*, 758 F. Supp. 2d 1288, 1337 (S.D. Fla. 2010).

bar. Further, the question of continuing misrepresentations poses an additional question requiring factual development. Defendants' contentions related to the statute of limitations are better suited for summary judgment. *Accord Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-cv-557-T-27EAJ, Dkt. 37 p. 8 (M.D. Fla. Aug. 2, 2012).

For related reasons, the arguments against disgorgement are not well taken at this time. Notwithstanding Defendants' arguments, the complaint adequately alleges that Defendants received management fees and a percentage of profits based on the performance of the Funds. (Dkt. 21 ¶ 36). The crux of the SEC's claims based on loans and guarantees and the newsletters is that those actions and statements affected the value of the Funds, which would have necessarily modified the management fees and percentage of profits received by Defendants. Defendants provide no authority that indicates these sources of income to Altholtz and WSP are not subject to disgorgement.

Finally, Defendants seek to dismiss the SEC's request for declaratory relief. However, the SEC seeks such a declaration in the context of a court order imposing civil penalties, disgorgement and other injunctive relief. At this juncture, there is no reason to dismiss the request for declaratory relief.

## CONCLUSION

Accordingly, Defendants Wealth Strategy Partners, LC and Harvey Altholtz's Motion to Dismiss Amended Complaint (Dkt. 24) is **DENIED**. Defendants shall answer the Amended Complaint within fourteen (14) days.

**DONE AND ORDERED** this 4th day of June, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record