UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.                                                       CASE No. 8:14-cv-2427-T-27TGW

WEALTH STRATEGIES
PARTNERS, LLP, HARVEY
ALTHOLTZ, STEVENS
RESOURCE GROUP, LLC,
and GEORGE Q. STEVENS,

        Defendants.

_____

## REPORT AND RECOMMENDATION

The Securities and Exchange Commission (SEC) has filed a second amended complaint against the defendants for defrauding investors in violation of the securities laws (Doc. 54). Defendants, Harvey Altholtz ("Altholtz") and Wealth Strategies Partners, LLP ("WSP"), are the subject of the SEC's recent motion for disgorgement, interest, and civil penalties (Doc. 108). The defendants had previously consented to the entry of judgments that permanently enjoin them from violating federal securities laws.

The judgments provided for the court-ordered determination of disgorgement, prejudgment interest, and civil penalties (Doc. 106, pp. 5-6;

Doc. 107, p. 6).   Significantly, the consent judgments stated that the allegations in the second amended complaint are taken as true for purposes of a motion on those matters (Doc. 106, p. 6; Doc. 107, p. 6).  Based upon the conceded allegations, I recommend that the defendants, jointly and severally, disgorge ill-gotten gains of $228,505.97, with prejudgment interest of $52,015.31, and that a civil penalty be assessed against WSP in the amount of $725,000.00 and against Altholtz in the amount of $150,000.00.

## I.

The second amended complaint essentially alleges that the defendants engaged in a scheme to defraud over 100 investors through misstatements and omissions concerning the financial strength of companies invested in by two funds, the Adamas Fund, LLLP ("Adamas Fund"), and the Stealth Fund, LLLP ("Stealth Fund") (see Doc. 54).[1]  Altholtz was WSP's principal with WSP being the partner to the Adamas and Stealth Funds (id., pp. 1, 4).[2]  Altholtz formed both the Adamas Fund and Stealth Fund in order to engage in investment activities (id., p. 6).   Altholtz and WSP were unregistered financial advisors to both funds (id., p. 4).   Altholtz also

_____

[1] The undisputed facts have also been set forth in the Order concerning the parties' motions for partial summary judgment (Doc. 100, pp. 1-3).

[2] Altholtz's son, Adam Altholtz, was also a partner in WSP (Doc. 100, p. 3).

managed the day-to-day businesses of both funds for WSP and solicited investments for the funds (Doc. 100, p. 2).

According to the second amended complaint, the defendants "raised approximately $30.8 million from investors through private sales of limited partnership interests in the Funds" (Doc. 54, p. 1). Thus, from April 2007 through February 2008, the defendants "raised about $18.1 million from 86 investors through private placement sales of limited partnership interests in the Adamas Fund" (id., p. 7). Also, from December 2007 through November 2009, the defendants "raised [] 12.7 million from about 57 investors through private sales of limited partnership interests in the Stealth Fund" (id.). The defendants, being in charge of the funds, also received management and incentive fees (id., p. 10). For example, between November 14, 2008 and February 1, 2010, "WSP received $147,500 in management fees from the Stealth Fund" (Doc. 100, p. 3). With respect to the Adamas Fund, between November 13, 2008, and September 30, 2009, "WSP received $67,500.00 in management fees" (id.).

The second amended complaint alleged a fraudulent scheme in which the defendants by misstatements and omissions through newsletters and offering statements to investors, failed to disclose to the investors the true

-3-

financial state of the companies (Doc. 54, pp. 2, 10, 15-18). Thus, the companies that had been invested in by the funds were doing poorly, while investors believed otherwise. Despite the companies failing, the defendants kept investing money into the companies.

Further, in violation of the operating agreements, in order to keep the failing funds afloat, the defendants from Altholtz family trusts provided loans to the funds without disclosing the conflict of interest to investors (id., pp. 2, 10-14). The loans were short term with high interest rates and the trusts received preferential treatment with respect to redemption over other investors (id., pp. 2, 3). In particular, in January 2009, WSP loaned the Adamas Fund $250,000 at an interest rate of 18% with a maturity date of March 31, 2009, and a default interest rate that was 50.7% based on Standard & Poor's 500 stock index (id., pp. 13-14).[3] WSP, however, then assigned the loan to an Altholtz family trust (id., p. 14). The SEC in its memorandum explains that the loan was assigned to trusts that were in Altholtz's daughters' names (see Doc. 109, p.7). The loan was first assigned to the Melanie S. Altholtz Irrevocable Trust and then later to the Karyn M.

---

[3]According to the summary judgment Order, the loan took place in two stages: $100,000 on January 9, 2009, and $150,000 on January 14, 2009 (Doc. 100, p. 4).

Blaise Irrevocable Trust (id.).  For both trusts, defendant Altholtz is the beneficiary and his son is the trustee (id.).

The second amended complaint indicates that in April 2010, despite the "Adamas Fund ha[ving] virtually no cash in its bank accounts, Altholtz sold more than $325,000 worth of money market securities out of the fund's brokerage account" (Doc. 54, p. 14).  On behalf of the Adamas Fund, Altholtz then issued a check to the family's trust for $391,005 as a repayment on the loan.[4]  The payment constituted $250,000 in principal and $141,005.97 in interest (id.).  Moreover, the defendant's family trusts received preferential redemption, whereas other investors' requests for redemption were denied (id., pp. 18-19).  In other words, the loan was paid back to the family trust — at a high interest rate — instead of providing redemption to requesting investors.

The SEC has filed a motion seeking disgorgement with prejudgment interest and the imposition of civil penalties against the defendants (Doc. 109).  The SEC requests that the defendants be held jointly and severally liable for disgorgement in the amount of $228,505.97, plus

---

[4]In its memorandum, the SEC indicates that the loan was repaid on May 3, 2010 (Doc. 109, p. 7).

prejudgment interest of $52,015.31 (id.). In addition, it seeks civil penalties of $150,000.00 against Altholtz and $725,000.00 against WSP (id.).

Altholtz filed a response opposing the imposition of disgorgement and civil penalties, essentially arguing that he is not to be blamed for the losses because the loans were "all done with the good will of attempting to save the investors from a formidable loss" (Doc. 113, p. 10). Altholtz also places the blame on other people and factors, including his son and the recession (see Doc. 113).

Defendant WSP did not file any response to the motion. Notably, an attorney (Michael C. Addison) has filed an appearance on behalf of WSP (Docs. 77, 79). Moreover, he approved the form of the consent document that not only authorized the entry of a permanent injunction, but set out provisions regarding disgorgement and civil penalties (Doc. 104-1, p. 7). Under these circumstances, WSP would seem to be entitled to challenge through counsel the SEC's claims of disgorgement, prejudgment interest and civil penalties. However, it did not do so.

The SEC's motion has been referred to me (Dkt. Entry 114). A hearing was subsequently held on the motion (Doc. 116). Altholtz, appearing pro se, expressed his position at the hearing. WSP did not appear.

-6-

II.

The consent judgments set out criteria under which disgorgement and civil penalties are to be assessed. Thus, the judgments provide (Doc. 106, p. 6; Doc. 107, p. 6):

> In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment of Permanent Injunction; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

Altholtz's response does not acknowledge these stipulations. Moreover, what he does not do is challenge, or even mention, the amounts sought by the SEC.

In support of his position, Altholtz states that he "neither admitted nor denied the allegations made by the Commission in the Second Amended Complaint" (Doc. 113, p. 6). Further, Altholtz explains that, due

to "extremely limited amounts of cash available for payment of defense by legal counsel," he had to "finally agree to sign a document presented to him by the SEC as a means to end his forced pro se representation" (id., p. 14). However, the consent judgments have established the facts as admitted as true with respect to the matter of determining disgorgement and civil penalties (see Doc. 106, pp. 1, 5-6; Doc. 107, pp. 1, 6). Thus, the defendants, having foregone the opportunity to go to trial, are bound by the stipulations they made in settling this case.

The Supreme Court has confirmed the principle that parties are not permitted to deny the truth of stipulated facts. Christian Legal Soc. Chapter of the University of California, Hastings College of the Law v. Martinez, 561 U.S. 661, 677-78 (2010) ("factual stipulations are formal concessions ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact"). Accordingly, the issues of disgorgement and civil penalties are to be decided based upon the facts alleged in the second amended complaint in light of the defendants' stipulation that they are to be accepted as true.

A.   Disgorgement

The plaintiff seeks an order requiring defendants Altholtz and WSP to pay, jointly and severally, disgorgement in the amount of $228,505.97 (Doc. 109). The judgments provide that, "upon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty" (Doc. 106, p. 5; Doc. 107, p. 6).

The remedy of disgorgement is intended to "deprive the wrongdoer of his ill-gotten gain" and to deter others from violating the securities laws. Securities and Exchange Commission v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978). Recently, the United States Supreme Court, in holding that disgorgement is a penalty, explained that "[i]t is imposed as a consequence of violating a public law and it is intended to deter, not to compensate." Kokesh v. Securities and Exchange Commission, ___ U.S. ___, 137 S.Ct. 1635, 1644 (2017). Further, the disgorgement amount set by the courts need only be a reasonable approximation of the ill-gotten gains. Securities and Exchange Commission v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004) ("The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains"); see also

-9-

Securities and Exchange Commission v. Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014) ("[T]he SEC needs to produce only a reasonable approximation of the defendant's ill gotten gains, and '[e]xactitude is not a requirement.'") (internal citation omitted).

As indicated, the SEC limits its request for disgorgement to $228,505.97 (Doc. 109, p. 9). This amount comprises two items consisting of $141,005.97 for the interest paid on a loan to an Altholtz family trust and $87,500.00 for management fees the defendants received.

With respect to the loan of $250,000, the undisputed facts show that the high interest amount of $141,005.97 was paid to the Blaise trust account based on a repayment of a loan, which loan itself was improper. Thus, this amount constituted accrued interest of $9,487.92 and a default interest rate of $131,518.05 on a short-term loan (see Doc. 100, p. 4). Neither defendant WSP nor defendant Altholtz has challenged this figure. Therefore, there should be a disgorgement of the exorbitant interest on the improper loan in the amount of $141,005.97.

The SEC also requests a disgorgement amount of $87,500.00 for the management fees that defendant WSP received after September 25, 2009. The undisputed facts demonstrate that WSP received management fees of

$215,000.00. However, the SEC is simply seeking $87,500.00, which is the amount of management fees within the five-year limitation period that WSP received after September 25, 2009.[5] With respect to these fees, the second amended complaint alleges that the defendants misrepresented the true value of the funds and thus the fees were based on a false value of the funds (Doc. 54, p. 10). As indicated, that allegation is to be accepted as true.

Defendant Altholtz claims "he received no compensation whatsoever from either Fund" (Doc. 113, p. 12). However, the undisputed facts demonstrate that WSP received management fees and that Altholtz was also compensated for managing the funds (Doc. 100, p. 2). Further, there is no reason to think that Altholtz, as the principal of WSP who ran the day-to-day operations and later acted as the financial advisor to the funds, did not receive any compensation. In any event, Altholtz, who did not even address this claim, has not demonstrated that an amount less than $87,500.00 is appropriate. Therefore, the SEC is entitled to a disgorgement amount of $87,500.00 for management fees.

---

[5]The Supreme Court, in Kokesh v. Securities and Exchange Commission, held that disgorgement is a penalty and, therefore, falls within the five-year statute of limitations of 28 U.S.C. 2462. 137 S.Ct. at 1644. The SEC filed its complaint on September 25, 2014; thus, anything prior to September 25, 2009, would be beyond the five-year statute of limitations.

Significantly, Altholtz does not contest the imposition of joint and several liability.  Morever, the SEC has cited authority to show that defendants may be held jointly and severally liable when they share a close relationship and a joint benefit (Doc. 109, p. 10).  <u>See</u> <u>Securities and Exchange Commission</u> v. <u>Calvo</u>, <u>supra</u>, 378 F.3d at 1216 (affirming that defendant was held jointly and severally liable with defendant company where defendant's family formed a company, owned a fifty-percent interest in defendant company, the defendant was the managing member of defendant company, both engaged in securities fraud violations, and the defendant "was a necessary participant and a substantial factor in [defendant company's] sale of unregistered securities.").  Therefore, a judgment ordering disgorgement to be paid by the defendants jointly and severally is appropriate.

Notably, defendant Altholtz appears to argue that money penalties should not be imposed because he does not have the financial resources to pay a money judgment (<u>see</u> Doc. 113, pp. 14-17).  However, the SEC correctly counters that it is entitled to disgorgement despite the defendant's ability to pay (Doc. 109, p. 8); <u>see</u> <u>Securities and Exchange Commission</u> v. <u>Warren</u>, 534 F.3d 1368, 1370 (11th Cir. 2008) (there is "nothing in the securities laws [that] expressly prohibits a court from

imposing penalties or disgorgement liability in excess of a violator's ability to pay.").[6] Thus, "[a]t most, ability to pay is one factor to be considered in imposing a penalty." Id. Having considered Altholtz's memorandum — which reflects neither acceptance of responsibility nor remorse — and after holding a hearing on the matter, due to the defendant's ill-gotten gains, disgorgement is warranted. Therefore, defendant Altholtz should be held jointly and severally liable for the disgorgement amount.

In sum, I am recommending that the SEC be awarded disgorgement in the amount of $228,505.97, with the defendants being jointly and severally liable for that amount.

B.   Prejudgment Interest

The SEC also seeks an award of prejudgment interest on the amount of disgorgement at the interest rate that the IRS uses to determine interest due on underpaid taxes (Doc. 109, pp. 10-11). A district court has discretion to award prejudgment interest to a prevailing litigant. United States Securities and Exchange Commission v. Carrillo, 325 F.3d 1268, 1273 (11th Cir. 2003); see also Securities and Exchange Commission v. Lauer, 478

---

[6]The Eleventh Circuit Court of Appeals also explained that "[a] contrary rule would allow con artists to escape disgorgement liability by spending their ill-gotten gains–an absurd result." Securities and Exchange Commission v. Warren, supra.

Fed.Appx. 550, 557 (11th Cir. 2012) ("Along with disgorgement, the district court may also award prejudgment interest, and has wide discretion in making that calculation.").

An award of prejudgment interest serves the important function of compensating the victims for the time they did not have use of their money because of the defendants' unlawful actions. <u>Securities and Exchange Commission</u> v. <u>First Jersey Securities, Inc.</u>, 101 F.3d 1450, 1476-77 (2nd Cir. 1996), <u>cert</u>. <u>denied</u>, 522 U.S. 812 (1997). It also insures that the wrongdoers do not receive what would otherwise be an interest-free loan. <u>Securities &</u> <u>Exchange Commission</u> v. <u>Merchant Capital, LLC</u>, 486 Fed. Appx. 93, 97 (11th Cir. 2012) ("Without prejudgment interest, the [defendants] would have benefitted from what in effect amounted to interest-free loans of ill-gotten gains.").

Neither WSP nor Altholtz has asserted a challenge against an award of prejudgment interest. In any event, any challenge would be foreclosed by each defendant's agreement that, if disgorgement is entered, prejudgment interest is to be calculated "from April 1, 2010, based on the rate of interest used by the Internal Revenue Service for the underpayment of

federal income tax as set forth in 26 U.S.C. § 6621(a)(2)" (Doc. 106, p. 6; Doc. 107, p. 6).

In this respect, the SEC has calculated the prejudgment interest rate based on the "delinquent tax rate established by the Internal Revenue Service, 26 U.S.C. § 6621(a)(2)" (Doc. 109, p. 11). The SEC further explains that the interest rate was calculated "on a quarterly basis, from May 3, 2010 (the date of their last conversion of funds) to October 17, 2016 (the date the Court entered permanent injunctions against them)" (id.). Thus, the SEC is seeking a prejudgment interest amount of $52,015.31 (id.). Accordingly, judgment should include a prejudgment interest amount of $52,015.31.

C.    Civil Penalties

The SEC "seeks separate civil penalties against WSP and Altholtz pursuant to Section 20(d) of the Securities Act, Section 21(d) of the Exchange Act, and Section 209(e) of the Advisers Act" (Doc. 109, p. 11). In this respect, SEC requests civil penalties in the amount of $150,000.00 against Altholtz and $725,000.00 against WSP, for their securities laws violations under those sections (id., p. 12). In connection with the SEC's motion for civil penalties, the consent judgments provide that the defendants "will be precluded from arguing that [they] did not violate the federal

securities laws as alleged in the Complaint" (Doc. 106, p. 6; Doc. 107, p. 6). Civil penalties are designed to punish the wrongdoer and to deter future violations. <u>Securities and Exchange Commission</u> v. <u>Monterosso</u>, <u>supra</u>, 756 F.3d at 1338. They are to be determined "in light of the facts and circumstances" of each case.      15 U.S.C. 77t(d)(2)(A); 15 U.S.C. 78u(d)(3)(B)(i).

Civil penalties are divided into a three-tier structure in both the Securities Act and the Securities Exchange Act, with the penalties being capped by the greater of a specified statutory amount, or the gross amount of pecuniary gain to the defendant. 15 U.S.C. 77t(d)(2), 78u(d)(3). The three tiers have increasing maximum statutory caps. The first tier applies simply to statutory violations. The second tier requires a violation involving fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

The penalty sought by the plaintiff falls in the third tier, which, as adjusted for inflation, allows for a penalty (occurring after March 3, 2009), not to exceed the greater of either $150,000.00 per violation by a natural person, and $725,000.00 for any other person, or the gross amount of

pecuniary gain to such defendants as a result of the violation.  See 17 C.F.R.

201.1001.  This tier applies, if:

> (1)  the  violation  involved  fraud,  deceit,
> manipulation, or deliberate or reckless disregard of
> a regulatory requirement; and

> (2) such violation directly or indirectly resulted in
> substantial losses or created a significant risk of
> substantial losses to other persons.

15 U.S.C. 77t(d)(2)(c), 78u(d)(3)(B)(iii).

The  SEC  contends  that  the  third-tier  penalties  clearly  are

applicable.  Thus, the second amended complaint, taken as true, alleges that

the defendants, as part of a scheme to defraud, made misrepresentations and

omissions to over 100 investors about the true financial nature of the funds

(Doc. 54, pp. 1-2, 7-8).  Thus, the violations involve fraud and deceit.

Moreover, the fraud resulted in substantial losses.  According to

the SEC, "the Funds had almost no value, with Adamas, which had raised

$18.1 million dollars from approximately 86 investors, [ ] 'nearly depleted,'

[ ] and Stealth, which had raised $12.7 million from approximately 57

investors, [ ] completely depleted" (Doc. 109, p. 13; see also Doc. 54, p. 7;

Doc. 109-3).  Clearly, the loss in this case was a substantial loss.  See United

States Securities and Exchange Commission v. Aleksey, 2007 WL 1789113 (M.D. Fla. 2007) ($82,960.18 was a substantial loss).

With respect to WSP, I recommend that the SEC's request for a civil penalty in the amount of $725,000.00 be granted. WSP was the general partner of the two funds and also acted as the financial advisor to both (Doc. 54, pp. 1-2; see also Doc. 100, pp. 2-3). Indeed, WSP participated in the fraudulent scheme to defraud that raised about $30.8 million dollars and caused substantial losses for many investors. WSP, as indicated, has not objected to the amount requested by the SEC.

As for Altholtz, I recommend that a civil penalty in the SEC's requested amount of $150,000.00 be imposed. Thus, Altholtz, as principal of WSP, controlled the daily activities, including managing the funds and providing incorrect information to investors regarding the true financial state of the funds (Doc. 54, pp. 1-3). Thus, the complaint alleges that (id., pp. 1-2):

> As part of a scheme to defraud investors, the Defendants made misstatements and omissions to current and potential investors concerning the Funds' use of investor proceeds and the financial strength of the companies in which the Funds invested.

In addition, with respect to one loan in particular, defendant Altholtz wrongfully participated in providing a high interest rate loan to a fund from

-18-

a family trust, and then provided preferential redemption in repayment of the loan to the family trust.

Significantly, defendant Altholtz does not argue that the funds did not incur substantial losses to investors (see Doc. 113). Rather, defendant Altholtz described it as a "formidable seven figure loss[ ]" (Doc. 113, p. 10). And, as indicated, Altholtz has not taken responsibility for his actions (see Doc. 113). Consequently, in light of the financial damage done to innocent and defrauded investors, the goals of punishment and deterrence warrant the maximum penalty of $150,000.00.

Altholtz essentially argues that he has limited financial means with which to pay a money judgment (see id., pp. 15-16). However, "[a]t most, ability to pay is one factor to be considered in imposing a penalty." Securities and Exchange Commission v. Warren, supra, 534 F.3d at 1370; see also Securities and Exchange Commission v. Monterosso, supra, 756 F.3d at 1338. Despite Altholtz's statements concerning his limited ability to pay, considering his participation in the scheme that caused over one hundred investors a substantial loss of more than thirty million dollars, the imposition of the maximum penalty is comparatively light. Moreover, the SEC is not seeking to penalize Altholtz based on his total gain from the scheme. Thus,

-19-

the SEC explains that it is only seeking "a civil penalty equivalent to just 65% of [Altholtz's] pecuniary gain" (Doc. 109, p. 14).   Therefore, I am recommending that the SEC's requested amount of a civil penalty of $150,000.00 be imposed against Altholtz.

III.

For the reasons stated above, I recommend:

A.   That defendants Altholtz and WSP be ordered to pay disgorgement of ill-gotten proceeds, jointly and severally, in the amount of $228,505.97.

B.   That defendants Altholtz and WSP be ordered to pay, jointly and severally, prejudgment interest in the amount of $52,015.31.

C.   That defendant WSP be ordered to pay a civil penalty of $725,000.00.

D.   That defendant Altholtz be ordered to pay a civil penalty of $150,000.00.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: May **17**, 2019

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.